## ..Neilson's Appeal.

1. Where the vestry of a Protestant Episcopal Church, in voting upon a question, stand six to five, the rector cannot vote as a member of the vestry with the minority and also cast a vote as presiding officer.

2. The charter of a Protestant Episcopal Church provided that the temporal affairs thereof should be managed by "a vestry to be composed of the rector, churchwardens and vestrymen." Subsequent provision was made for the choosing of the rector by "the churchwardens and vestrymen," and it was also provided that the "vestry" should "consist of twelve persons" elected in a specified manner. The wardens were to be chosen from the vestrymen, and a by-law provided that the "vestry" should have power to fill vacancies occurring in their body. Upon the occurrence of a vacancy in the vestry:

   *Held* that the rector was entitled to a vote, as a member of the vestry, in choosing a person to fill the vacancy.

January 25th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas No. 1, of *Philadelphia county*. In equity: of July Term, 1883, No. 212.

This was a bill in equity filed by Richard N. Sommers and nine others, complainants, against Robert H. Neilson and eleven others, defendants, to restrain the latter from acting as vestrymen of the Church of the Evangelists, and from interfering with the former in their alleged right to do so.

The case was heard on bill, answer and affidavits, from which the following facts appeared: At an election for vestrymen in the Church of the Evangelist, held on Easter Monday, April 10th, 1882, Richard N. Sommers, Dr. H. Yale Smith and ten others were duly elected to serve until March 26th, 1883. At the regular meeting of the vestry held June 13, 1882, there was a vacancy caused by the death of Smith. The remaining eleven vestrymen were present, and Rev. Henry R. Percival, the rector, presided. William A. Chew and Robert H. Neilson were nominated to fill the vacancy. Six of the vestrymen voted for Chew, while the remaining five, with the rector, voted for Neilson. A tie thus resulting, the rector claimed the right to cast the deciding vote for Neilson, which he did, and declared him elected. Chew, however, took his seat as a member of the vestry and Neilson did not. The rector and four other members of the vestry thereafter absented themselves from all meetings held by the remaining members.

Subsequently William J. Mullin, another member of the vestry died, and Benjamin Bickerton was elected by the acting members in his place. At a stated meeting held February 13, 1883, eight members of the acting vestry, including Chew

and Bickerton, were present, and elected Brown, Tomlin and Bickerton, judges of the election for vestrymen to be held on Easter Monday, March 26th, 1883. Bickerton afterwards declined to act, and one C. P. Fowler was appointed in his place. The election was accordingly held on March 26th, 1883, conducted by the above named judges. Twenty ballots were cast for the complainants. After the polls closed the judges announced that the complainants together with Joseph Hilferty and Joseph W. Tittermary, were duly elected vestrymen for the term of one year from March 26th, 1883.

Upon the same day, at the place of the above election, the rector's warden,—having given notice (under Art. I, § 2, of the by-laws, *infra*) that the pretended appointment of the above named judges of election was void for want of a quorum of the vestry at the time of their appointment; and that they were disqualified by reason of their not being pewholders as required by said by-law,—opened polls at which thirty-three votes were cast for the defendants, who at the closing of the polls were declared elected.

Notice of the election of the two different bodies of vestrymen was given to the rector, who, however, announced to the congregation the election of the defendants, and acted with them—whereupon the complainants filed this bill.

The following are the material parts of the charter and by-laws:—

### CHARTER.

Art. III. "The temporal affairs of this corporation shall be under the management of a vestry to be composed of the rector, church wardens and vestrymen, chosen in the manner hereinafter provided. . . . . .

Art. V. as amended. "The rector of this church shall be elected by the church wardens and vestrymen in such manner as the statutes and by-laws shall ordain. The vestry of said church shall consist of twelve persons, who shall be elected on Easter Monday of each year in the following manner, namely: Every male adult, who shall appear by the church books to have paid one dollar or more per annum towards the support of the said church for two years next before the election, and is a worshipper at the said church, shall be entitled to vote; *Provided,* That in case of the failure to elect vestrymen on that day, the corporation shall not on that account be dissolved, but the election shall be holden on some other day in such manner as the by-laws may prescribe. The vestrymen continuing in office until others are chosen, and having authority to fill vacancies in their own body."

Art. VIII. "The vestry, or a majority of them, shall and

may convene from time to time, and make such and so many rules, by-laws, ordinances, and regulations as they may deem expedient for the good government and support of the church, and shall have power to fill all vacancies in their own body; *Provided always*, that such by-laws, rules, ordinances, and regulations be not repugnant to the constitution and canons of the Protestant Episcopal Church of the State of Pennsylvania, or the Protestant Episcopal Church in the United States of America, or to the constitution and laws of the United States or of the State of Pennsylvania."

### BY-LAWS.

ART. I., § 2. " The vestry may choose three pewholders as judges of the election, and if, from any cause whatever, the vestry shall fail to appoint said judges, or they or either of them should neglect or refuse to act under such appointment, it shall become the duty of the wardens to supply the vacancy or vacancies thus created, by making a new appointment, or if that cannot be done conveniently at the time, then the wardens themselves shall act as judges of the election."

ART. II., § 2. "Seven members (of the vestry) shall constitute a quorum for the transaction of business."

ART. II., § 4. "The vestry shall have power to fill all vacancies that may occur in their body. All elections shall be by ballot, unless the same shall be dispensed with by unanimous consent."

The court, ALLISON, P. J., delivering the opinion, held that the rector, although, under the charter, an essential part of the vestry, was not a vestryman and had no vote in an election for a member of that body; that Chew and Bickerton had been legally elected, the judges of election properly appointed, and the complainants, therefore, duly elected. The preliminary injunction was accordingly granted.

The defendants, thereupon, took this appeal, assigning for error the decision of the court:

(1.) " That the rector of ' The rector, church wardens, and vestrymen of the Church of the Evangelists ' is not a vestryman."

(2.) " That the rector had no power to vote upon the question of filling the vacancy occasioned by the death of H. Yale Smith."

(3.) " That William A. Chew was elected vestryman of the corporation."

(4.) " The granting of the injunction."

*Henry C. Olmsted* and *Richard C. McMurtrie*, for the appellants.—The right of the rector to vote twice is not now in-

sisted upon, although there is authority for his so doing. Baum's Rights and Duties of Rectors, etc., 76; Cripp's Law of the Church and Clergy, 804; Blunt's Book of Church Law, 296; Hoffman's Ecclesiastical Law in New York, 79. But the contention that the rector had no right to vote at all cannot be sustained. The right of the rector to vote at a vestry meeting is the law of the Episcopal church, without *any* exception, in the states or countries which recognize the law of the church as binding in such matters. Baum on the Rights of Rectors and Vestrymen, 75; Richey's Churchman's Handbook, section 61 and note; Hoffman's Law of Church in New York, 79, 80, 81. Nor can the charter and by-laws of this church be so construed as to change this law, on the ground that under them the rector is not a vestryman. Art. III., of the charter, provides that the temporal affairs of the congregation shall be under the management of the rector, church wardens and vestrymen. Art. V., after referring to the qualifications for electors, provides that the vestrymen shall continue in office until others are chosen, and shall have authority to fill vacancies in their own body. But this latter provision that the "vestrymen" shall have authority to fill vacancies in their own body does not take away the rector's right to vote as a member of the body, for should this be the case the church wardens, who are members of the vestry, would also be deprived of a vote, and this has never been alleged. The court below held that the rector, though an "essential part of the vestry, is in no sense a vestryman;" and "the rector, though a member of the body termed the vestry, is in no sense a vestryman, nor is he entitled to perform the functions of a member of the vestry, which the charter restricts to the vestrymen alone." It may be that the rector does not become a member of the vestry from the fact of his being a member of the corporation; but it is incomprehensible that he should be a "member of the vestry" and yet not have the rights of a "vestryman." The manner in which the corporation has interpreted this provision is shown in Article II., section 4, of the by-laws: "The *vestry* shall have power to fill all vacancies that may occur in their own body."

The rector, then, having the right to one vote, the ballots cast for Chew and Neilson were equally divided, and there was no election. There could, therefore, have been no quorum of the vestry at any meeting held after June 13, 1882, because the withdrawal of the rector and four members of the vestry left only six legally elected vestrymen, and seven were required by the by-laws to make a quorum. All proceedings at the so-called vestry meetings after that date were therefore void. The question here is not one within the juris-

diction of a court of chancery. The proper procedure
would have been quo warranto. Gilroy's appeal, 4 Out., 5.
Or if there was irregularity in the conduct of the election,
the remedy was by a new election.

*J. Henry Williams* (with whom was *Amos Briggs*), for the
appellees.—The rector, although a member of the corporation,
is not a "vestryman," and Art. V., of the charter, restricts
the right to vote, at least upon the filling of a vacancy in the
vestry, to those who are elected by the voters of the corpora-
tion. Three judges of election were "appointed" by the
vestry, and upon the withdrawal of one another was appoint-
ed in his place. Until the vestry failed to appoint, the
warden had no right to do so. The poll held by the three
judges having been legal, there was no necessity for a new
election. The plaintiffs were, therefore, de facto vestrymen,
were in possession, and as the defendants sought to interfere
with the exercise of their rights as vestrymen, they were
clearly entitled to the equitable jurisdiction of the court.
Tidewater Pipe Company *v.* Satterfield, 12 W. N. C., 457,
affirmed by the Supreme Court, in Satterfield's appeal,
decided May 21, 1883.

Mr. Justice PAXSON delivered the opinion of the court,
February 4, 1884.

It was conceded by the learned Judge below that if this bill
had presented the question of the legality of the election of
vestrymen it could not be sustained. He held, however, that
the plaintiffs below having shown a prima facie right to the
office which they claim, the case comes within the provisions
of the Act of 13th June, 1836, which confers on the Courts
of Common Pleas the supervision and control of corporations,
as well as of unincorporated associations and societies, and
that pending any contest growing out of said election, the
plaintiffs have the right to invoke the equity powers of the
court to restrain their adversaries from interfering with their
right to act as de facto vestrymen.

Assuming, for the purposes of this case, the position above
stated to be correct, we will consider how far the plaintiffs are
"apparently at least in the right," and the defendants "appa-
rently in the wrong."

The second and third assignments of error raise the only
questions which, in our view of the case, require discussion.
The second alleges that the court erred in holding that the
rector had no power to vote upon the question of filling the
vacancy occasioned by the death of H. Yale Smith; and the

second, that the court erred in holding that William A. Chew was elected vestryman of the corporation.

The second assignment is involved in the first. This will be understood when it is stated that the rector's vote, if received, creates a tie, and that its rejection as illegal by the court below gave to Mr. Chew a majority of one over Mr. Neilson.

The election to fill the vacancy created by the death of Mr. Smith was participated in by the eleven surviving vestrymen and the rector. Six of the vestrymen voted for Mr. Chew; the other five and the rector voted for Mr. Neilson. This made a tie, whereupon the rector claimed and exercised the right of giving an additional vote in favor of Mr. Neilson. This right, although claimed in good faith, and not without some color of authority in the Episcopal church, cannot be sustained. This was conceded upon the argument, and need not be discussed. It is manifest Mr. Neilson was not elected to fill the vacancy referred to.

The learned court below was clearly right in holding that the rector had not the right to vote twice, but the denial of the rector's right to vote at all is not so apparent. The position of the learned court upon this point is tersely stated as follows: "But the rector, though a member of the body termed the vestry, is in no sense a vestryman, nor is he entitled to perform the functions as a member of the body, which the charter restricts to the vestrymen alone."

It is not necessary to consider the practice of the English church, nor even the general rule in the Episcopal church of this country—though it is believed the latter at least is not in accord with the rule as laid down by the court below—for the reason that the question before us is one of power in the charter. The third article of said charter provides that "The temporal affairs of this corporation shall be under the management of a vestry, to be composed of the rector, church wardens and vestrymen chosen in the manner hereinafter provided, who shall have power," &c. The fifth article provides how they shall be chosen. It says: "The rector of this church shall be elected by the church wardens and vestrymen in such manner as the statutes and by-laws shall ordain. The vestry of said church shall consist of twelve persons who shall be elected on Easter Monday, . . . . . *Provided*, That in case of the failure to elect vestrymen on that day, the corporation shall not on that account be dissolved, but the election shall be holden on some other day in such manner as the by-laws shall prescribe. The vestrymen continuing in office until others are chosen, and having authority to fill vacancies in their own body."

It will thus be seen that the vestry is composed of the rector, church wardens and vestrymen. The vestrymen consist of twelve persons who are elected on Easter Monday ; the two church wardens are selected from the vestrymen. The rector being therefore an essential part of the vestry, what is there in the charter of this church to prohibit his voting at any meeting of that body? Unless such prohibition can be found, such right cannot be denied.

It was contended that because the fifth article declares that "the vestry of said church shall consist of twelve persons who shall be elected on Easter Monday," and that said vestrymen shall have "authority to fill vacancies in their own body," the rector had no right to vote in filling any such vacancy. The fifth article was not intended to conflict with the third article, which declares who shall compose the vestry. The word "vestry" in the fifth article was plainly intended to designate the number of vestrymen and provide for their election on Easter Monday. The article prescribes the manner of their election, and the qualifications of voters. This view is strengthened by the fact that neither the rector nor church wardens are referred to in the fifth article as belonging to the vestry, while they are expressly designated as members of the vestry by the third article.

But it is said the vestrymen, and not the vestry, are to fill all vacancies in their own body, and as this was the case of such vacancy the rector could not vote. The fifth article standing alone might seem to favor such a construction, but when we turn to the eighth article we find that "The vestry, or a majority of them, shall and may convene from time to time, and make such and so many rules, by-laws, ordinances and regulations as they may deem expedient for the good government and support of the church, and shall have power to fill all vacancies in their own body." When we examine the by-laws which the vestry have made in pursuance of this power, we find in article second, section 21, the following: "The vestry shall have power to fill all vacancies that may occur in their own body."

. We therefore regard it as entirely clear that it is the vestry as a whole, and not the twelve vestrymen as a portion of the vestry, that have the power under the charter and by-laws of this church, to fill vacancies in that body, and as the right of the rector as a member thereof to vote is not denied by the charter or the law of the church, he was entitled at the election for vestryman occasioned by the death of Mr. Smith, to vote for Mr. Neilson. This made a tie, and neither Mr. Neilson nor Mr. Chew was elected. As the election for twelve vestrymen on Easter Monday, 1883, depends for its validity to a

considerable extent upon whether Mr. Neilson or Mr. Chew was elected to fill the vacancy caused by Mr. Smith's death, it is evident the plaintiffs have no such apparent right to act as vestrymen as entitles them to the interference of a court of equity. The whole difficulty can and probably will be settled on the ensuing Easter Monday, when it is hoped wise counsels will prevail and the just rights of all parties be respected.

The decree is reversed, and the bill dismissed at the costs of the appellees.